IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

RHONDA STOCKWELL                                                                        PLAINTIFF

V.                                            NO. 3:20-CV-00393-JTK

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

## ORDER

I.  **Introduction:**

Plaintiff, Rhonda Stockwell ("Stockwell"), applied for disability benefits on December 27, 2017, alleging a disability onset date of April 30, 2017. (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Stockwell's application on February 27, 2020. (Tr. at 23-24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Stockwell has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

II.  **The Commissioner's Decision:**

The ALJ found that Stockwell had not engaged in substantial gainful activity since the alleged onset date of April 30, 2017.[2] (Tr. at 12). The ALJ found, at Step Two, that Stockwell had the following severe impairments: degenerative changes of the cervical and lumbar spine; arthritis

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

versus tendinitis of the left shoulder, left knee, and left hip; carpal tunnel syndrome; anxiety; depression; and personality disorder. (Tr. at 12-13).

After finding that Stockwell's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Stockwell had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with exceptions: (1) she can only occasionally climb ramps and stairs; (2) she can only occasionally stoop, kneel, crouch, and crawl; (3) she can only occasionally reach overhead; (4) she can only occasionally be exposed to extreme cold and vibration; (5) she can frequently handle; (6) she can never climb ladders, ropes, or scaffolds; (7) she can never be exposed to unprotected heights; (8) she can understand and remember simple instructions; (9) she can sustain attention and concentration to complete simple tasks with regular breaks every two hours; (10) she can have occasional interaction with supervisors, coworkers, and the public; and (11) she can adapt to routine work conditions and occasional workplace changes. (Tr. at 15).

At Step Four, the ALJ found that Stockwell was unable to perform any past relevant work. (Tr. at 21). At Step Five, the ALJ relied upon the testimony of a Vocational Expert (VE) to find that, considering Stockwell's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 23). Therefore, the ALJ found that Stockwell was not disabled. *Id.*

### III.   Discussion:

   A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.

*Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B. Stockwell's Arguments on Appeal

Stockwell contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the ALJ did not properly evaluate the opinion of a treating provider; (2) the RFC did not fully incorporate Stockwell's limitations; and (3) the ALJ failed to resolve a possible conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Lumbar and cervical MRIs showed moderate issues that explained Stockwell's recurrent pain in those areas. (Tr. at 608-612). However, after Stockwell had a cervical fusion in August

2017, her pain improved and her doctor said she was progressing well. (Tr. at 690). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). Stockwell said that after surgery she had more energy and had less worry. (Tr. at 777-784). Post-op cervical spine x-rays looked good. (Tr. at 538-539).

Left hip and right knee x-rays were unremarkable (Tr. at 981-984), but Stockwell had a knee arthroscopy in August 2018. (Tr. at 52-53). She improved thereafter (Tr. at 1003). Her doctor recommended that she begin exercising. (Tr. at 1304). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Stockwell was referred to physical therapy, which helped. (Tr. at 1003, 1152-1153). Stockwell said on numerous occasions that treatment helped her pain. (Tr. at 777-778, 1416-1417, 1421-1422). In April 2019, she said morphine worked for pain. (Tr. at 1421-1422). A left hip injection was productive. (Tr. at 47). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Stockwell had a carpal tunnel release on her wrist. (Tr. at 455-461). She improved enough to keep working after the surgery. (Tr. at 485-486, 637-638). After Stockwell had an arthroscopy on her left shoulder in November 2018, her range of motion was improved and she said her pain was 1/10. (Tr. at 1144-1163). In fact, Stockwell admitted that she could wash dishes, do laundry, cook, go to church, and drive. (Tr. at 50-53). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Finally, no doctor placed any functional restrictions on Stockwell, and she was able to work for some time in spite of her alleged impairments. (Tr. at 479-486, 626-630).

Stockwell suffered from anxiety, depression, mood swings, and sleeplessness. However, the voluminous mental health treatment notes reveal that her problems tracked very closely with upheaval in her personal life. (Tr. at 1321-1344, 1405-1417). Situational stressors like these do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

Moreover, on many occasions, Stockwell said that she was happy, or that medication helped her with mental impairments. (Tr. at 783-784, 816-826, 932-933, 1136-1137). She seemed to benefit from treatment. When her situational stressors resolved, Stockwell's mental health improved.

Stockwell first asserts that the ALJ did not properly evaluate the opinion of APRN Johnathan Cottingham, a nurse practitioner at one of the pain clinics Stockwell visited. (Tr. at 54). Mr. Cottingham filled out a short checkbox form dated May 2, 2019, in which he opined that Stockwell could not perform even sedentary work and would miss three days or work per month. (Tr. at 1364-1365). The ALJ found that the opinion was not persuasive. (Tr. at 21).

On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. §

416.920c(c)(1-2) (2017). *See Phillips v. Saul*, 2020 U.S. Dist. LEXIS 110370 (E.D. Ark. June 24, 2020).

The ALJ gave good reasons for finding Mr. Cottingham's opinion to be unpersuasive. In his decision, the ALJ pointed to the fact that Mr. Cottingham's opinion was on a checkbox form, and had no corresponding narrative.[3] (Tr. at 21). He also cited to Mr. Cottingham's treatment notes, (albeit from one visit), and how they failed to support the extreme restrictions. *Id*. The ALJ observed that Cottingham found Stockwell had a normal motor exam and good range of motion in major joints. *Id*. The ALJ also pointed to Stockwell's improvement with treatment, giving specific examples from the record. *Id*. He noted full range of motion in her right hand following carpal tunnel surgery. *Id*. These clinic notes are inconsistent with and do not support Mr. Cottingham's extreme restrictions. Aside from the specific discussion of Mr. Cottingham's opinion, the ALJ thoroughly addressed the objective evidence, as well as the inconsistencies between Stockwell's complaints and her daily activities. (Tr. at 13-21). The ALJ properly evaluated Mr. Cottingham's opinion. *See Murphy v. Berryhill*, 2019 U.S. Dist. LEXIS 40435 *20-22 (N.D. Iowa March 11, 2019).

Next, Stockwell argues that the RFC did not fully incorporate her limitations. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after

---

[3] It should be noted that short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The Court has explained above what the record bore out: Stockwell improved with treatment, no doctor placed any restrictions on her, and she could perform a variety of daily activities. As well, the ALJ considered the opinions of the state-agency medical experts who reviewed the records before the hearing stage. (Tr. at 20-22). The ALJ went further than those experts did and limited Stockwell to the lowest exertional work level, with many postural limitations. (Tr. at 15). Despite reports of positive mood and amenability to psychiatric medications, the ALJ placed concrete limitations on Stockwell in the mental portion of the RFC. *Id.* The RFC was appropriate and well-supported.

Finally, Stockwell contends that the ALJ erred at Step Five. The ALJ limited Stockwell to occasional overhead reaching, but the jobs which the VE identified required frequent reaching: table worker (DOT 739.687-182); addresser (DOT 209.587-010); and document preparer (DOT 249.587-018). This, Stockwell argues, presents a possible conflict. Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007).

The ALJ in this case presented the hypothetical question about functional abilities to the VE. The VE identified jobs, and then said:

> Those, I should mention, are not in conflict with the DOT on the occasional overhead reaching. The DOT does not classify jobs in this way. And in considering these examples, I've had to fall back on my past experience with these and similar jobs.

(Tr. at 57).

The ALJ then went a step further and asked the VE if his testimony about the overhead reaching was consistent with the DOT and its companion publications (the VE said yes). (Tr. at 58). Moreover, Stockwell's attorney did not ask any questions about overhead reaching of the VE, which could indicate that he thought the VE's testimony resolved the conflict. Finally, in the decision, the ALJ stated that he relied upon the VE's education and experience in accepting his testimony about any possible conflict.[4] (Tr. at 23).

Cases from this Circuit have wrestled with the issue about how the VE responds when asked about a possible conflict. In cases where the VE just cited to his "experience," courts have reversed and remanded. *Humphrey v. Berryhill*, 2019 U.S. Dist. LEXIS 50243 *18 (E.D. Mo. March 26, 2019) (remand was proper in the face of a DOT conflict where the VE provided "no insight into the issue"); *Hackworth v. Comm'r of SSA*, 2021 U.S. Dist. LEXIS 141386 *7-8 (E.D. Ark. July 29, 2021) (VE's reliance on experience alone did not clear the bar); *Montoya v. SSA*, 2019 U.S. Dist. LEXIS 99311 (E.D. Ark. June 13, 2019) (in the face of reaching conflict, VE's response that he relied on his "experience" to address conflict was insufficient).

But where the VE talks just a bit more about his experience with the jobs identified or jobs that are similar, courts have found no error. *Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *25-27 (E.D. Mo. Sept. 11, 2018) (ALJ properly relied upon VE's response that "in his experience" claimant would be able to perform jobs identified, and he gave more detail about the assigned limitations); *Jones-Brinkley v. SSA*, 2021 U.S. Dist. LEXIS 20302 *6-7 (E.D. Ark. Feb. 3, 2021)

---

[4] Specifically, the ALJ wrote: "Pursuant to SSR 00-4p, the undersigned has determined that the VE's testimony is consistent with the information contained in the DOT, with the exception of the matter not addressed in the DOT such as overhead reaching . . . However, the undersigned has relied upon the VE's education and experience in accepting [the] testimony regarding overhead reaching . . . (Tr. at 23).

(VE may rely on his judgment and experience with the jobs in question to resolve any possible conflict); *Porter v. Berryhill*, 2018 U.S. Dist. LEXIS 37141 *42 (W.D. Mo. Mar. 7, 2018) (VE's response that his testimony was "supplemented by his knowledge and experience of human resources and work practices in business and industry" was sufficient to resolve the conflict with respect to reaching).

An Eighth Circuit case presented this issue of conflict between VE testimony and the DOT, and the Court reversed the ALJ where the VE only called on experience to resolve the conflict. *Stanton v. Comm'r, SSA*, 899 F.3d 555 (8th Cir. 2018). But in that case, the conflict concerned reasoning levels of the jobs and not overhead reaching. *Id*. And more importantly, in *Stanton*, the ALJ only used boilerplate language to address the conflict in her decision; here the ALJ provided (just a bit) more detail. This is indeed a close call, given the wide-ranging results from other cases in this Circuit; but the VE's testimony here was just sufficient enough, and Stockwell's attorney raised no objection. The ALJ did not err at Step Five.

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the medical opinion and the RFC incorporated Stockwell's limitations. Also, the ALJ did not err at Step Five. The finding that Stockwell was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 2nd   day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE